LYMAN R. SHANNON

*vs.*

WILFRED N. BAKER

(TWO CASES)

Aroostook.   Opinion, February 9, 1950.

*George B. Barnes,* for plaintiff.

*James P. Archibald,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, JJ.

MURCHIE, C. J.   The plaintiff herein, in two processes, commenced a week or more apart, but heard together in the Superior Court and brought forward by the defendant, after jury verdicts against him, on separate general motions, containing all the usual allegations, and a single Bill

of Exceptions, sought to establish his title to a described tract of land in Molunkus Plantation, on which a dwelling house is located, and to recover damages for a trespass by the defendant which involved the removal of two doors therefrom. That the defendant removed them is admitted by stipulation. Obviously that would constitute a trespass if plaintiff had title, by adverse possession, as he claims, and he would be entitled to damages. The damage award was $25. The allegation that it was excessive was not argued and must be considered as waived. *Reed et al.* v. *Central Maine Power Co.,* 132 Me. 476; 172 A. 823; *Marr* v. *Hicks,* 136 Me. 33; 1 A. (2nd) 271. This narrows the issue, on the motions, to whether the verdict on the writ of entry, that the defendant disseized the plaintiff, after he acquired title by adverse possession, is supported by evidence in the record.

The Bill of Exceptions alleges no error except the refusal of the Trial Court to give a requested instruction, quoted in full hereafter. It must be assumed, in the absence of other exceptions to the charge, that if the refusal was not error, the instructions given were proper and sufficient. *Archibald* v. *Queen Insurance Co.,* 115 Me. 564; 99 A. 771; *Frye* v. *Kenney,* 136 Me. 112; 3 A. (2nd) 433.

The motions and exceptions are overruled for the reasons hereafter stated.

The processes involve a tract of land lying in the southwest corner of Lot No. 26 in the plantation aforesaid, adjoining Lot No. 25 therein. In addition to the stipulation concerning the removal of the doors, there are stipulations that the record title to Lot No. 26 is in the defendant; that the plaintiff is the owner of Lot No. 25; that the latter acquired the ownership thereof by descent from his father and a conveyance from his brothers and sisters who, with him, acquired it in that manner; and that the father held his title under a conveyance from his own father, the plaintiff's

grandfather. The conveyance to the plaintiff from his brothers and sisters is in evidence as an exhibit and covers all the real estate owned by the father at the time of his death.

The evidence would justify factual findings that the father died two days before his eightieth birthday; that he was born on the property and lived there most of his life, although not at the time of plaintiff's birth; that at the time of his death he and the grandfather, and their families, had occupied the house for more than eighty years, using it for the storage of household goods when not living in it; and that the house was within a block and rail fence, enclosing the property in question including a garden used in connection with the house, for more than twenty years. It would require finding that the defendant was familiar with the property for a few years around 1905 and knew that the grandfather was living in the house at that time.

Without any denial of the evidence given on behalf of the plaintiff as to the occupation of the property by the plaintiff and his predecessors, or the time interval thereof, the defendant testified that he acquired title to all of Lot No. 26 under a warranty deed from a grantor not identified; that thereafter the plaintiff's father acknowledged that he did not own the house and asked permission for the plaintiff to occupy it; and that such permission was given by him. He testified also that he had a conversation with the plaintiff about the title to Lot No. 25, in which he assured the plaintiff that he might continue to live in the house (on Lot No. 26) whatever action his brothers and sisters might take about Lot No. 25, and thereafter that he had one with reference to the property in dispute in which he asserted his title and told the plaintiff he must move his "stuff" out of the house. The testimony with reference to conversations with the plaintiff was in direct conflict with that of the plaintiff.

Considering the established principles of law that factual questions and the credibility of witnesses are for the determination of a jury, and that courts should not usurp such functions, *Parsons* v. *Huff,* 41 Me. 410; *State* v. *Lambert,* 97 Me. 51; 53 A. 879; *Barrett* v. *Greenall,* 139 Me. 75; 27 A. (2nd) 599; *State* v. *McKrackern,* 141 Me. 194; 41 A. (2nd) 817, the motions must be denied on the ground that the evidence would justify all the factual findings necessary to support the verdict returned in the real action including the rejection of defendant's testimony about conversations with the plaintiff and his father. It was recognized in *Webber et al.* v. *Barker et al.,* 121 Me. 259; 116 A. 586, that while courts, as distinguished from juries, should decide what acts of dominion would create a title by adverse possession, if maintained for a sufficient period of time, the question whether such acts had been performed and maintained and the circumstances in connection therewith were issues for a jury. The jury was charged properly on these points and the only issue presented in the Bill of Exceptions in that connection arises on the refusal to give the requested instruction.

The real foundation of the defendant's claim is apparent when reference is had to the requested instruction. This was that:

> "To exclude real estate from the area described in a recorded deed, the grantee must have actual knowledge of the adverse claim of ownership prior to accepting the deed; otherwise the real estate is included and conveyed by a deed from its record owner to a new grantee."

The defendant, pressing his allegation that the refusal to give it constituted error, cites us to *Parker* v. *Prescott,* 86 Me. 241; 29 A. 1007, and 45 Am. Jur. 465-6. The principle declared in that case and text is applicable to unrecorded conveyances and has no bearing on possessory rights. That a title may be acquired under proper circumstances by a

possession of appropriate kind maintained for a sufficient period of time is undoubted. See *Worcester* v. *Lord*, 56 Me. 265; 96 A. D. 456. The requisites of a possession which may ripen into title, as stated in 1 Am. Jur. 864, are that it be "actual, open, notorious, hostile, under claim of right, continuous, and exclusive." None of these terms carry the semblance of suggestion that the holder of the record title must have "actual knowledge of the adverse claim of ownership." On the contrary, they indicate clearly that it is the nature of the possession which is controlling. The requested instruction was properly refused.

*Motions overruled.*

*Exceptions overruled.*